UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAEHO CHOI,<br><br>                    Plaintiff,<br><br>               v.<br><br>LEXISNEXIS RISK SOLUTIONS INC.,<br><br>                    Defendant. | Case No.: 4:26-cv-1629<br><br>**District Judge:**<br><br>**Magistrate Judge:**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Jaeho Choi ("Plaintiff" or "Mr. Choi"), by and through the undersigned counsel, brings this action on an individual basis, against LexisNexis Risk Solutions Inc. ("Defendant Lexis" or "Lexis") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § *et seq.* and states as follows:

## INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can, and do sustain substantial damage,

1

both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, insurers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, insurance, or a car or mortgage loan.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6. One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

8. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items

3

of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.     Plaintiff's claims arise out of Defendant LexisNexis's blatantly inaccurate credit reporting, wherein Defendant LexisNexis reported to Plaintiff's potential insurer(s) a speeding ticket that did not involve Plaintiff.

12.     Accordingly, Plaintiff brings claims against Defendant LexisNexis for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b)

13.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendant for its willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as described herein.

## PARTIES

14.     Jaeho Choi ("Plaintiff" or "Mr. Choi") is a natural person residing in Katy, Texas, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15.     Defendant LexisNexis Risk Solutions Inc. ("Defendant LexisNexis" or "LexisNexis") is a Georgia corporation doing business throughout the United States, including the State of Delaware and in this District, and has a principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005.  LexisNexis can be served at its registered agent, CT Corporation System, located at 289 S. Culver St., Lawrenceville, GA 30046.

16.     Defendant LexisNexis is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Defendant LexisNexis is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

19. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

20. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

21. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

22. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to

ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

23. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**Factual Background**

24. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

25. Defendant LexisNexis sells millions of consumer reports (often called "credit reports" or "reports").

26. Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant LexisNexis, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27. Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendant LexisNexis, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

28. Defendant LexisNexis obtains consumer information from various sources.

29. The majority of institutions that offer auto insurance rely upon consumer reports from CRAs (like Defendant LexisNexis) to make insuring decisions.

30. The information Defendant LexisNexis includes in a consumer report contributes to a consumer's overall insurance worthiness.

31. Defendant LexisNexis routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

32. Defendant LexisNexis fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers.

33. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendant LexisNexis for its inaccurate credit reporting.

34. Thus, Defendant LexisNexis is on continued notice of its inadequate reporting procedures. Specifically, Defendant LexisNexis is on notice that its inadequate procedures regularly result in the reporting of inaccurate information.

35. Defendant LexisNexis has received and documented many disputes from consumers complaining that Defendant LexisNexis reported inaccurate information about them.

**Plaintiff Applies for New Car Insurance**

36. In or around September 2025, Plaintiff's insurance provider, Allstate, notified him of an upcoming premium increase.

37. Upset about the insurance increase in or around September 2025 Plaintiff decided to shop around for auto insurance.

38. First, Plaintiff consulted Subi Insurance because Subi had previously assisted him with obtaining home insurance.

39. On September 19, 2025, Plaintiff was shocked and confused when his Subi agent asked him about a purported speeding ticket in Maryland, sending him a screenshot of the record

from the report, but not the full report. The screenshot showed a purported speeding ticket dated January 23, 2025, that was not his or his wife's. Plaintiff explained to his Subin agent that this information was inaccurate, neither he nor his wife had a speeding ticket, but Subi did not provide the full report or explain how to dispute the information, but Plaintiff assumed it had been rectified.

40. Consequently, on or about October 7, 2025, Plaintiff completed and submitted another application for auto insurance to Geico.

41. When Plaintiff received Geico's response, he was surprised to see that the Geico quote was significantly higher than Plaintiff's previous insurer *and* also higher than the new quote from Subi Insurance.

42. In fact, Plaintiff was shocked and upset to learn that Geico's quote was again based on an inaccurate report claiming that he had a speeding ticket in Montana from January 23, 2025 (case no. TK10020250000308). This was wholly inaccurate reporting.

43. Plaintiff has not received a speeding ticket in years; Plaintiff lives in Texas and has never lived or had a driver's license in either Montana or Maryland.

44. Plaintiff currently has a driver's license in Texas. He previously lived in other states and had driver's licenses from California, Florida, and New Jersey. He has never had a driver's license issued in Montana or Maryland, nor has he had a speeding ticket in Montana, on January 23, 2025, or otherwise.

**Defendant LexisNexis Publishes an Inaccurate Report about Plaintiff to a Third Party**

45. Plaintiff called Geico and informed them that the January 23, 2025 speeding ticket did not belong to him and should not be a factor in the policy pricing.

46. Geico informed Plaintiff that they had received the information from Defendant LexisNexis and that he would have to dispute with Defendant LexisNexis and have it corrected, before Geico could provide a revised quote.

47. The sole reason the January 23, 2025, speeding ticket was reported inaccurately as Plaintiff's on the consumer report that Defendant LexisNexis provided to Geico about Plaintiff was that Defendant LexisNexis failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective insurers.

48. Had Defendant LexisNexis followed reasonable procedures, it would have discovered that the inaccurate information belonged to a different consumer.

49. In preparing and selling a consumer report about Plaintiff, wherein Defendant LexisNexis published to Plaintiff's prospective insurer inaccurate information about Plaintiff, Defendant LexisNexis failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff's Dispute Regarding the Inaccurate Credit Reporting October 2025**

50. In or around October 2025, extremely shocked, surprised, and embarrassed at Defendant LexisNexis's inaccurate reporting, Plaintiff disputed the inaccurate speeding ticket information with Defendant LexisNexis Specifically, Plaintiff called Defendant LexisNexis.

51. Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

52. Plaintiff told Defendant LexisNexis that it was reporting inaccurate information about him.

53. Specifically, Plaintiff told Defendant LexisNexis that it was reporting a January 23, 2025, speeding ticket that was not his and that belonged to a different consumer

54. On or about October 21, 2025, Plaintiff obtained a copy of his LexisNexis consumer disclosure.

55. Upon reviewing the disclosure, Plaintiff noticed that in addition to the speeding ticket, Defendant LexisNexis was reporting several pieces of information that did not belong to him.

56. Specifically, Defendant LexisNexis was reporting the following pieces of information which do not belong to Plaintiff:

57. **Names:**
    - JIM CHOI
    - JAE YUNG CHOI
    - JAE S CHOI
    - MR JAYHO JAY CHOI

**Date of Birth:**
- X

**Address Variations:**
- 5301 2ND AVE N, GREAT FALLS, MT 59405-1509;
- 478 NE 210TH CIRCLE TER 202 APT, MIAMI, FL 33179-5238;
- 25415 BAYSIDE PL, HARBOR CITY, CA 90710-3070
- 635 S HOBART BLVD 406 APT, LOS ANGELES, CA 90005¬5505
- 7000 SW 105TH ST, PINECREST, FL 33156-3266
- 8613 N SOUTHGATE SHORES CIR, TAMARAC, FL 33321¬8125
- 4063 W 7TH ST, LOS ANGELES, CA 90005-3504
- 1010 WILSHIRE BLVD, LOS ANGELES, CA 90017-5662
- 1600 WILSHIRE BLVD 205 STE, LOS ANGELES, CA 90017-1630
- 3810 WILSHIRE BLVD #1809 1809, LOS ANGELES, CA 90010

- 3810 WILSHIRE BLVD, LOS ANGELES, CA 90010-3223

**Phone numbers:**

- 9549660973
- 2132201433

**Emails:**

- JWCHOI@MSG.PACBELL.COM JWCHOI@MSG.PACBELL.COM;
- JAECHOI@PRODIGY.NET JAECHOI@PRODIGY.NET
- KASSICHOI@NETSCAPE.NET KASSICHOI@NETSCAPE.NET
- JAECHOI1@KAYNET.COM JAECHOI1@KAYNET.COM
- MIJOO@HOTMAIL.COM MIJOO@HOTMAIL.

**Address Characteristic Record**

- RECORD 22 478 NE 210TH CIRCLE TER 202 APT, MIAMI, FL 33179 ¬ 5238
- RECORD 32 25415 BAYSIDE PL, HARBOR CITY, CA 90710 ¬ 3070
- RECORD 34 635 S HOBART BLVD 406 APT, LOS ANGELES, CA 90005 ¬ 5505
- RECORD 38 7000 SW 105TH ST, PINECREST, FL 33156 ¬ 3266
- RECORD 39 8613 N SOUTHGATE SHORES CIR, TAMARAC, FL 33321 ¬ 8125
- RECORD 57 5301 2ND AVE N, GREAT FALLS, MT 59405 ¬ 1509
- RECORD 64 5301 2ND AVE N, GREAT FALLS, MT 59405 ¬ 1509
- RECORD 81 5301 2ND AVE N, GREAT FALLS, MT 59405 ¬ 1509
- RECORD 89 5301 2ND AVE N, GREAT FALLS, MT 59405 ¬ 1509

**Business Association Records**

- Record 22 LK JEWELRY WATCH & REPAIR
- Online Marketing Records
- Record 5 Email Address: JWCHOI@MSG.PACBELL.COM
- Record 6 Email Address: JAECHOI@KAYNET.COM
- Record 7 Email Address: JAECHOI@PRODIGY.NET
- Record 9 Email Address: KASSICHOI@NETSCAPE.NET

- Record 13 Email Address: JAECHOI1@KAYNET.COM
- Record 14 Email Address: KASSICHOI@NETSCAPE.NET
- Record 15 Email Address: MIJOO@HOTMAIL.COM

**Property Deed Records**

- Record 3 Address: 3810 WILSHIRE BLVD 1809, LOS ANGELES, CA 90010
- Record 4 Address: 3810 WILSHIRE BL 1809, LOS ANGELES, CA 90010
- Record 5 Address: 3810 WILSHIRE BLVD 2010, LOS ANGELES, CA 90010

**Department of Driver Services Records:**

- RECORD 2 JAE CHOI YUNG- License State: MT-Driver's License Details: · License Number: XXXXX014 · State of Issue: TX · Issue date: 05/01/2015 · Expiration date: 06/20/2029 · License Type: · Status Code: · Status Description: CLEAR · Class Code: · Class Description: C¬N-COM,GVWR<26001
- Driver's License Violation Details: · Code: 3512 · Type: Conviction · Points: 0 · Case Status: 1008 · Incident Date: 01/23/2025 · Resolution Date: 02/04/2025 · Commercial Driving License: · Case Disposition: 1030 · Additional Violation Details: SPEEDING INTERSTATE URBAN - EXCEED DAY LIMIT OF 65 MPH : MISD TICKET #: B293608 E CASE #: TK10020250000308 CASE FILE DATE: 20250124.

58. On or about November 4, 2025, Plaintiff received an updated copy of his consumer disclosure from Defendant LexisNexis.

59. LexisNexis removed some of the inaccurate information about the January 23, 2025, ticket in Maryland but did not remove all of the information about another consumer.

60. LexisNexis failed to conduct a reasonable investigation and to determine that all of the disputed information was inaccurate, and modify and delete the inaccurate information accordingly, in violation of 15 U.S.C. 1681(a)(1)(A). LexisNexis removed some but not all of the inaccurate information, **removing the name Jae Yung Choi, the speeding violation and certain license details** but **leaving in all of the other disputed and inaccurate information**.

61. Plaintiff reasonably believes that Defendant LexisNexis continued to publish information belonging to other consumer(s) and attributing that information to Plaintiff.

62. As a result of the inaccurate reporting of the January 23, 2025 speeding ticket, and despite Plaintiff's dispute to Defendant LexisNexis, Defendant LexisNexis damaged Plaintiff's ability to obtain auto insurance at the rate to which he would have otherwise been entitled to without the inaccurate record, and the delay caused by the inaccuracy and the incomplete investigation resulted in Plaintiff missing the window before Geico's rate increases that went into effect

63. At all times pertinent hereto, Defendant LexisNexis was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant LexisNexis herein.

64. At all times pertinent hereto, the conduct of Defendant LexisNexis, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

65. Defendant LexisNexis is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant LexisNexis's violations of the FCRA are willful.

66. As a result of Defendant LexisNexis's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to secure accurately priced insurance; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and higher insurance rates, and fear of auto insurance denials.

67. Plaintiff's household circumstances rendered him particularly vulnerable to the Defendant's inaccuracies. As a self-employed individual operating a single-income household, any unexpected increase in expenses has a direct and immediate impact on Plaintiff's ability to manage his financial obligations. Any inflation of insurance premiums or threats to affordable coverage directly undermines his ability to provide for his family and maintain essential household stability.

68. The discovery of the inaccurate record was both frustrating and destabilizing. Plaintiff turned to his younger brother for emotional support for his distress surrounding the credit mix; however, due to a demanding schedule, his brother was unable to provide tangible assistance, leaving Plaintiff to navigate the complex dispute process alone. The time spent disputing the false traffic violation, coupled with the ongoing uncertainty of how long this "mixed" information remained on his file, has resulted in significant emotional distress, including anxiety, sleeplessness, and headaches, as well as lost time worrying and disputing the false information, and trying to resolve the mix-up so he could obtain insurance and otherwise correct his credit picture.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant LexisNexis)

69. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

70. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

71. On numerous occasions, Defendant LexisNexis prepared patently false consumer reports concerning Plaintiff.

72. Defendant LexisNexis readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's insurance worthiness.

73. Defendant LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

74. As a result of Defendant LexisNexis's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to secure insurance; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of auto insurance denials.

75. Defendant LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

76. Plaintiff is entitled to recover attorneys' fees and costs from Defendant LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendant LexisNexis)

77. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

78. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

79. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

80. On at least one occasion during the past two years, Plaintiff disputed the inaccurate information with Defendant LexisNexis and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the May 12, 2023 car accident that he was not a party to.

81. In response to Plaintiff's dispute, Defendant LexisNexis failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

82. Defendant LexisNexis violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the

30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

83. As a result of Defendant LexisNexis's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to secure insurance; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

84. Defendant LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover attorneys' fees and costs from Defendant LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


Dated: February 27, 2026,              Respectfully submitted,

                                        <u>/s/ Beth K. Findsen</u>
                                        Beth K. Findsen, TX No. 24002679
                                        **CONSUMER JUSTICE LAW FIRM PLC**
                                        8095 N. 85th Way,
                                        Scottsdale, AZ 85258
                                         E: bfindsen@consumerjustice.com
                                         T: 602-807-6676
                                         F: 480-613-7733

                                        *Attorney for Plaintiff*
                                        *Jaeho Choi*